IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WANDA IVETTE POWELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:18-cv-00262 ) JUDGE RICHARDSON |
| THE TENNESSEE CREDIT UNION, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Plaintiff, Wanda Powell, filed this action against her former employer, Defendant, The Tennessee Credit Union, asserting discrimination based on her race, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts I & II) and the Tennessee Human Rights Act (Counts III & IV). 42 U.S.C. § 2000e *et seq.*; Tenn. Code Ann. § 4-21-101. Plaintiff also asserted a claim under the Tennessee Public Protection Act (Count V). Tenn. Code Ann. § 50-1-304. On May 11, 2018, Judge Crenshaw concluded that Plaintiff's state law claims (Counts III-V) were time-barred and dismissed those claims with prejudice. (Doc. No. 14). This case was subsequently transferred to the undersigned. (Doc. No. 18). Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 20), which seeks summary judgment on Plaintiff's remaining claims, *i.e.*, her Title VII claims (Counts I and II). Plaintiff filed a response (Doc. No. 25), and Defendant replied (Doc. No. 27). For the reasons stated below, Defendant's motion will be **GRANTED** in part and **DENIED** in part.

# FACTUAL BACKGROUND[1]

On August 21, 2011, Plaintiff began working as a bank teller for The Tennessee Credit Union. (Doc. No. 28 ¶ 1; Doc. No. 22-2). On December 7, 2016, using Defendant's intraoffice instant messaging system, Plaintiff discussed drafting a letter to the Equal Employment Opportunity Commission ("EEOC") with three other employees. (Doc. No. 28 ¶¶ 16-17). Yvonne Parrish, one of the employees involved in the messaging chain, stated, "I think today is the day that Wanda is dropping the bomb – with the copy of the EEOC complaint letter. Wanda = when you get her, let us know so we can be on HIGH alert." (Doc. No. 28 at ¶ 28; Doc. No. 22-9 at 27). Plaintiff responded, "LETTER NOT READY YET . . . HUBBY WAY TO [sic] BUSY WITH SOME CASES." (Doc. No. 28 at ¶ 29; Doc. No. 22-9 at 28). Tracy Dain and Blair Schooler also participated in this message chain. (Doc. No. 28 at ¶ 29; Doc. No. 22-9 at 27).

On December 8, 2016, Defendant began investigating Plaintiff's use of the intraoffice instant messaging system after an assistant branch manager, Cayce Taylor, notified management that she observed Plaintiff's "excessive" use of the instant messaging system. (Doc. No. 28 at ¶ 20). Kathy Johnson, Defendant's Vice President of Operations, instructed Donna Hoff, Defendant's Vice President of E-Operations, to review the computer logs and determine how often Plaintiff was utilizing the instant messaging system. (*Id*. at ¶ 21). After being apprised of the results of Ms. Hoff's review, Ms. Johnson concluded that Plaintiff's use of the instant messaging system was excessive, and for personal, rather than business, purposes. (*Id*. at ¶ 22). Ms. Johnson notified Karla Kellogg, Defendant's Human Resources Generalist, of her findings. (*Id*. at ¶ 23). Ms. Kellogg determined that Plaintiff's excessive use of the instant messaging system violated

---

[1] The following facts, unless somehow qualified herein, are taken as true for purposes of this motion, because they are either: (1) asserted and evidentially supported by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by the non-movant and thus credited by this Court even if disputed by the movant; or (4) subject to judicial notice.

Defendant's Information Systems Usage and Standards Policy, which limits the use of Defendant's instant messaging system to "business purposes only," and notes that ". . . any violation may result in disciplinary action, up to and including termination." (*Id*. at ¶ 24; Doc. No. 22-7 at 5-8).

Ms. Kellogg further determined that Plaintiff violated the same policy on October 27, 2015, when Plaintiff inappropriately used the Internet at work. (Doc. No. 28 at ¶ 24). The disciplinary report, which Plaintiff signed, stated that Plaintiff was to review Defendant's Information Systems Usage and Standard Policy. (Doc. No. 28 at ¶ 24; Doc. No. 22-7 at 16-17). The disciplinary report stated that any further violations of the Information Systems Usage and Standard Policy would lead to termination. (Doc. No. 28 at ¶ 25; Doc. No. 22-7 at 16-17). Plaintiff contends that she was informed that the disciplinary report related only to the prohibited use of the Internet to visit sexually suggestive websites; thus, she was not warned about personal use of Defendant's instant messaging system. (Doc. No. 22-1 at 25-26).

On December 12, 2016, Defendant terminated each of the four employees that participated in the intraoffice instant messaging conversation regarding Plaintiff's EEOC letter. (Doc. No. 28 at ¶ 17). Defendant's proffered reason for termination of Plaintiff and the other three employees was violation of the company policy based on misuse of corporate assets for non-business purposes based on excessive, personal use of the intraoffice instant messaging system. (*Id*. at ¶ 18).

On December 30, 2016, Plaintiff sent to the EEOC the letter she had referenced drafting in the December 7, 2016 instant message conversation. (Doc. No. 22-1 at 15). In the letter, Plaintiff expressed her belief that she "fel[t] like the bank has discriminated against [her] on the basis of [her] race and ethnicity" and stated that Defendant denied her two promotions in favor of "less-qualified Caucasian employees." (*Id*.). Plaintiff also referenced a negative performance evaluation that prevented her from getting a raise. (*Id*. at 1-2). Plaintiff indicated that prior to her termination,

she had discussed drafting the EEOC letter in the instant messaging system and that when Mr. Martin terminated Plaintiff, Plaintiff observed several printed pages of Plaintiff's instant messages in front of him. (*Id*. at 2; Doc. No. 25-1 at ¶ 6). The word "EEOC" contained within the transcript was highlighted in yellow. (Doc. No. 25-1 at ¶ 6).

On February 14, 2017, Plaintiff submitted a Charge of Discrimination to the Tennessee Human Rights Commission and the EEOC. (Doc. No. 22-11). In the Charge, Plaintiff alleges that:

> In August 2016, I applied for the position of Scanner Specialist. I later found out that a White employee, who did not currently work for my employer, was hired into the position. In September 2016, I was not given my pay raise. I later found out that Gladdis (White) received her pay raise. In November, [sic] 2016, I sent a message to three other co-workers informing them that I was going to send a letter to the EEOC. On December 12, 2016, the CEO showed me a copy of the message I sent stating I was sending a letter to the EEOC and I was discharged. . . . I believe that I have been discriminated against based on my national origin (Hispanic), and retaliated against for my protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*; Doc. No. 22 at ¶ 36).

On February 1, 2019, Defendant filed its Motion for Summary Judgment, with supporting brief. (Doc. No. 20; Doc. No. 21). Plaintiff filed a response wherein Plaintiff indicated that she abandoned her claims for failure to promote (Count I), but still opposed summary judgment as to her retaliatory discharge claim (Count II). (Doc. No. 25 at 9) ("Plaintiff abandons the claims related to failure to promote"). Accordingly, the Court will grant Defendant's Motion for Summary Judgment with respect to Count I. *See Carrigan v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 870 F. Supp. 2d 542, 550 (M.D. Tenn. 2012) (Trauger, J.) (granting summary judgment as to claims that plaintiff abandoned). Defendant's Motion for Summary Judgment with respect to Count II is ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Trans. Co.,* 446 F.3d 637, 640 (6th Cir. 2006). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record—including, *inter alia*, depositions, documents, affidavits, or declarations—that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll.*

*of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e–3(a). A Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 538 (6th Cir. 2008). Here, Plaintiff has invoked the latter method. Therefore, the Court analyzes Plaintiff's retaliation claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), applicable to such method.

Under that framework, at the outset, it is Plaintiff's burden to provide evidence of her *prima facie* case by a preponderance of the evidence. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: "(1) [she] engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007) (citing *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003), and *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 67-68 (2006) (modifying the third

6

element of a discrimination claim to require a "materially adverse action" rather than an "adverse employment action")). Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). In other words, Plaintiff must show that she would have not been terminated, but-for her instant messages discussing her EEOC complaint.

In its motion for summary judgment, Defendant assumes arguendo that Plaintiff can meet her *prima facie* case and in response asserts a legitimate, non-retaliatory reason for Plaintiff's termination (*i.e.*, that she was terminated for her excessive personal use of the intraoffice instant messaging system) was pretextual. (Doc. No. 21 at 16-21). Because Defendant proffered legitimate reasons for its actions, the burden shifts back to Plaintiff "to raise a genuine issue of material fact as to whether [Defendant's] reasons were actually a pretext designed to mask unlawful discrimination." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 599 (6th Cir. 2007). "To meet [his or her] burden on pretext, the plaintiff must produce evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." *Id*. (quoting *Haughton v. Orchid Automation*, 206 F. App'x 524, 531 (6th Cir. 2006)). Pretext can be demonstrated three ways: "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id*. (quoting *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002)). Not surprisingly, Defendant claims Plaintiff cannot meet this burden.

The first alternative type of showing to establish pretext requires a plaintiff to demonstrate that the proffered basis for (*i.e.*, the events or circumstances supposedly justifying) the plaintiff's discharge never happened, *i.e.*, that they are "factually false." *Manzer v. Diamond Shamrock*

*Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). Plaintiff does not argue that Defendant's proffered reasons for her termination are false, *i.e.*, that she did not violate the instant messaging system policy. Plaintiff instead argues that a past disciplinary action did not put her on notice that Defendant could terminate her for excessive personal use of the instant messaging system. (Doc. No. 25 at 6-8). However, Plaintiff's alleged lack of notice that she could be terminated for her actions does not create a genuine issue of fact as to whether Defendant's proffered reasons for Plaintiff's termination were false. *See Veluzat v. Williamson Med. Ctr.*, 627 F. App'x 534, 542 (6th Cir. 2015) (explaining that the plaintiff's "mistake" or "confusion" over whether he was required to attend a workshop failed to raise a genuine issue of material fact as to whether the underlying conduct upon which the defendant based its reason for termination on occurred because the plaintiff "admit[ted] that he did not attend the seminar and that he did not change his time card or alert his superiors."). Accordingly, Plaintiff cannot show that the proffered reason has no basis in fact.

Under the second type of showing of pretext, the plaintiff concedes the factual basis underlying the employer's proffered explanation but attempts to show that an illegal motivation was *more likely* the reason for the termination. *Manzer*, 29 F.3d at 1084. Plaintiff was employed by Defendant for five years; during that time she used Defendant's instant messaging system for non-work related messages on many occasions, yet she was never disciplined for use of the instant messaging system until four days after she discussed her EEOC letter on the instant messaging system. Thus, Plaintiff argues that "Defendant's actions in terminating Plaintiff (and the other three [] employees) were not motivated by those employees' casually chatting over the intra-office messaging system while still getting their work done; it was motivated by Plaintiff's intent to file

an EEOC claim. Defendant had to fire the other employees to provide 'cover.'" (Doc. No. 25 at 8).

Defendant argues that Plaintiff cannot show her protected activity was the motivation behind her termination because the persons involved in terminating Plaintiff were all unaware of Plaintiff's EEOC activity. Such awareness, however, is actually a disputed fact. Michael Martin, Defendant's CEO, testified in his deposition that he had not read or relied upon any purported reference to the EEOC prior to terminating Plaintiff. (Doc. No. 28-1 at 14). Plaintiff's supervisor, Holly Lile, testified in her deposition that she had not reviewed the instant messages in detail and was not aware of any statement regarding an EEOC letter when she recommended to Mr. Martin that Plaintiff be terminated. (Doc. No. 28-4 at 6, 7, 58, 59, 60, 61). On the other hand, Plaintiff avers in her affidavit that in the meeting in which Mr. Martin informed her that she was terminated, he had a transcript of Plaintiff's instant messages in front of him and Plaintiff observed the letters "EEOC" contained within the transcript highlighted in yellow. (Doc. No. 25-1 at P 6). At the summary judgment stage, credibility judgments and weighing of evidence are improper and the facts must be viewed most favorably for the non-movant (here, Plaintiff). *Hostettler*, 895 F.3d at 852. Thus, a genuine issue has been raised as to the material alleged fact that Defendant's decisionmakers were aware of Plaintiff's EEOC activity.

Additionally, Defendant argues that Plaintiff cannot demonstrate pretext because the investigation into Plaintiff's use of the instant messaging system began *prior to* Defendant learning of Plaintiff's conversation regarding the EEOC letter.[2] (Doc. No. 21 at 17-18). The Court disagrees that this destroys Plaintiff's ability to demonstrate pretext. The decision to terminate Plaintiff was

---

[2] Because Plaintiff's comment regarding the EEOC letter was made on December 7, 2016, one day prior to the beginning of Defendant's investigation on December 8, 2016, Doc. No. 22-9 at 28, Defendant conceivably could have been aware of Plaintiff's EEOC comment prior even to initiating the investigation, and the Court does not see that Defendant has eliminated any genuine issue as to this possibility.

9

not made until after Ms. Johnson completed the investigation. It is disputed whether the investigation revealed Plaintiff's conversation regarding the EEOC letter to Defendant's decision markers. If a reasonable jury concluded that Defendant's decision makers did have knowledge of Plaintiff's EEOC activity, a reasonable jury could also conclude that it was discovery of that communication, and not Plaintiff's use of the instant messaging system, that *more likely* motivated Plaintiff's termination.

Viewing the facts most favorably to Plaintiff, the Court finds that a reasonable juror could reject the Defendant's proffered reason for Plaintiff's termination because of the temporal proximity (four days) between Plaintiff's mention of her EEOC letter in an instant message and her termination,[3] combined with the fact Mr. Martin possessed a copy of the instant message conversation discussing the EEOC letter—with the word EEOC highlighted in yellow—during Plaintiff's termination meeting. Further, a reasonable juror could also find that Defendant's termination of the three employees whom did not indicate that they were drafting an EEOC letter but participated in the instant message conversation regarding Plaintiff's EEOC letter, were terminated so that Defendant would "appear evenhanded in the face of potential litigation." *Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 824-25 (M.D. Tenn. 2011) (holding that "a reasonable juror could conclude that the defendant did not initially plan to discipline the white employees and that it only did so to appear evenhanded in the face of potential litigation."). Furthermore, these three employees were supportive of Plaintiff's EEOC letter in the instant messaging conversation, which could also lead a reasonable juror to believe that these employees

---

[3] "Although 'temporal proximity alone will not support an inference in the face of compelling evidence' to the contrary, "the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection.'" *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554–55 (6th Cir. 2002) (quoting *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987)). Additionally, here, other facts exist in the record, besides temporal proximity, that could lead a reasonable juror to find that Defendant's proffered reason for Plaintiff's termination was pretextual.

were terminated not simply for their excessive use of the instant messaging system, but rather because they supported Plaintiff's filing of an EEOC complaint. (Doc. No. 23-9 at 28).

Accordingly, Plaintiff has created a genuine issue of material fact as to whether Defendant's proffered reason for Plaintiff's termination was "actually a pretext designed to mask unlawful discrimination."[4] *Michael*, 496 F.3d at 599. Therefore, Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII retaliation claim (Count II) will be denied.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** in part and **GRANT** in part Defendant's Motion for Summary Judgment (Doc. No. 20). The Court will **GRANT** Defendant's motion with respect to Plaintiff's Title VII racial discrimination claim (Count I), because Plaintiff has abandoned this claim. The Court will **DENY** Defendant's motion with respect to Plaintiff's Title VII retaliation claims (Count II).

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[4] Although the exercise is ultimately academic, because Plaintiff's claim survives based on the second type of showing of pretext, the Court notes that Plaintiff does not show pretext via the third alternative. To demonstrate pretext under the third alternative, a plaintiff generally presents "evidence that other employees, particularly employees not [engaged in protected conduct], were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084. Plaintiff has not attempted to present any evidence of another employee engaging in similar conduct and receiving different treatment. She therefore does not raise a genuine issue of material fact via the third category of showing whereby pretext can be demonstrated.